**Opinion issued July 9, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00402-CV

———————————

## OSIE RUSH, Appellant

## V.

## ACE AMERICAN INSURANCE COMPANY, Appellee

On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Case No. 33532

## MEMORANDUM OPINION

Appellant, Osie Rush, challenges the trial court's judgment, rendered after a jury trial, in favor of appellee, Ace American Insurance Company ("Ace"), in Rush's suit for judicial review of the decisions of the Texas Department of Insurance,

Division of Workers' Compensation ("DWC").[1]  In three issues, Rush contends that the trial court erred in granting Ace a directed verdict and excluding certain evidence.

We affirm.

## Background

Rush claimed that, on November 4, 2013, he sustained an electrical shock injury in the course and scope of his employment at Trinity Industries, Inc. ("Trinity").  Following a benefit review conference,[2] the DWC held a contested case hearing on June 25, 2015 (the "June 25, 2015 hearing")[3] to determine (1) whether Rush's compensable injury[4] sustained on November 4, 2013 extended to and included "a cervical strain, [a] right shoulder strain, disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder[,] and memory loss"

---

[1]    *See* TEX. LAB. CODE ANN. §§ 410.251–.308 ("A party that has exhausted [his] administrative remedies . . . and that is aggrieved by a final decision of the appeals panel may seek judicial review . . . .").

[2]    *See id.* §§ 410.021–.034 ("A benefit review conference is a nonadversarial, informal dispute resolution proceeding . . . .").

[3]    *See id.* §§ 410.151–.169 ("Contested Case Hearing").

[4]    Ace considered Rush's compensable injury to be an electrical shock injury and subsequent redness of his left fifth finger that occurred on November 4, 2013.  *See id.* § 401.011(10) ("Compensable injury means an injury that arises out of and in the course and scope of employment for which compensation is payable . . . ." (internal quotations omitted)).

2

and (2) whether Rush sustained disability[5] resulting from his November 4, 2013 injury, and if so, for what period of time. The hearing officer found:

1.  Rush's "cervical strain, right shoulder strain, disc protrusions at C3 through C6, tendinosis and . . . partial thickness tear of the right shoulder[,] and memory loss were neither caused nor aggravated and did not raise out of or naturally flow from [his] compensable injury of November 4, 2013[]";

2.  "The preponderance of the evidence [was] contrary to Dr. Carter's opinion on extent of injury[]"; and

3.  Rush "did not establish that he was unable to obtain and retain employment at wages equivalent to his pre-injury wage as a result of [his] compensable injury of November 4, 2013 during the period beginning November 5, 2013 and continuing through the date of the June 25, 2015 hearing."

The hearing officer then concluded that Rush's "compensable injury of November 4, 2013 d[id] not extend to and include a cervical strain, [a right shoulder strain], disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder[,] or memory loss" and Rush did not sustain "disability resulting from the November 4, 2013 compensable injury during the period [of time] beginning [on] November 5, 2013 and continuing through the date of the June 25, 2015 hearing."[6]

---

[5] *See id.* § 401.011(16) ("Disability means the inability because of a compensable injury to obtain and retain employment at wages equivalent to the pre[-]injury wage." (internal quotations omitted)).

[6] *See id.* § 410.169 ("A decision of an administrative law judge . . . is final in the absence of a timely appeal by a party . . . .").

3

Rush appealed the hearing officer's decision to an administrative appeals panel.[7] On September 28, 2015, the appeals panel upheld the hearing officer's decision.

Following a second benefit review conference,[8] the DWC held another contested case hearing on April 13, 2016 (the "April 13, 2016 hearing")[9] to determine (1) whether Rush's "compensable injury of November 4, 2013 extend[ed] to and include[d] bilateral carpal tunnel syndrome"; (2) whether Rush had "reached maximum medical improvement,"[10] and if so, when; (3) Rush's impairment rating;[11] and (4) whether Rush sustained disability resulting from the November 4, 2013 compensable injury during the period of time beginning on June 26, 2015 and continuing through the date of the April 13, 2016 hearing. The hearing officer found:

1. Rush's "[b]ilateral carpal tunnel syndrome was not caused by, and did not naturally flow from [his] November 4, 2013 compensable injury[]";

[7] *See id.* §§ 410.201–.209 ("Appeals judges, in a three-member panel, shall conduct administrative appeals proceedings.").

[8] *See id.* §§ 410.021–.034.

[9] *See id.* §§ 410.151–.169.

[10] *See id.* § 401.011(30) ("Maximum medical improvement means the earlier of: (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated; (B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or (C) the date determined as provided by [Texas Labor Code] [s]ection 408.104." (internal quotations omitted)).

[11] *See id.* § 401.011(24) ("Impairment rating means the percentage of permanent impairment of the whole body resulting from a compensable injury." (internal quotations omitted)).

2. "Dr. Bajwa certified that [Rush] reached maximum medical improvement on April 9, 2014 with a 0% impairment rating; his certification [was] not contrary to the preponderance of the other medical evidence[]"; and

3. Rush's "November 4, 2013 compensable injury was not a cause of [his] inability to obtain and retain employment at wages equivalent to his pre-injury wage during the period from June 26, 2015 through the date of the [April 13, 2016] hearing."

The hearing officer thus concluded that Rush's "compensable injury of November 4, 2013 d[id] not extend to and include bilateral carpal tunnel syndrome"; Rush reached maximum medical improvement on April 9, 2014; Rush's "impairment rating [was] 0%"; and Rush did not sustain disability resulting from the November 4, 2013 compensable injury during the period of time beginning on June 26, 2015 and continuing through the date of the April 16, 2016 hearing.[12] Rush appealed the hearing officer's decision to an administrative appeals panel.[13] On July 15, 2016, the appeals panel upheld the hearing officer's decision.

Rush then appealed the administrative appeals panels' decisions to the trial court.[14] In his first amended petition, Rush alleged that on November 4, 2013, he worked as "a burner" for Trinity at its facility in Navasota, Texas. According to

---

[12] *See id.* § 410.169.

[13] *See id.* §§ 410.201–.209.

[14] *See id.* §§ 410.251–.308 ("A party that has exhausted [his] administrative remedies . . . and that is aggrieved by a final decision of the appeals panel may seek judicial review . . . .").

5

Rush, as part of his job, he "operated a computerized machine which fabricated large metal objects" and frequently "use[d] a portable electrical powered magnet to move [the] large metal objects." On November 4, 2013, while making a large metal plate, Rush "needed to move the portable electrical [powered] magnet." He "attempted to cut off the power to the magnet," but, unknown to him, the magnet remained powered. "At some point, [Rush] attempted with both hands to unplug the electrical [powered] magnet," and as he grasped the magnet's plug, he "received a violent electrical shock of 4[4]0 volts." Rush was "stuck to the strong electrical current for at least [ten] seconds," and upon freeing himself, he saw "soot on the tips of his fingers and a burn on his left hand and left arm." Rush then reported his injury to his supervisor and received treatment at a hospital. Upon release from the hospital on the same day of his injury, Rush returned to work at Trinity's facility. According to Rush, the electrical shock injury that he sustained on November 4, 2013 affected his entire body; it injured his left hand, left arm, neck, shoulders, and head and caused memory loss.

Rush further alleged that on June 2, 2014, his treating doctor[15] placed him on "light duty status," but did not restrict the number of hours that Rush could work at Trinity's facility. However, on June 23, 2014, Trinity "began sometimes limiting

---

[15]    *See id.* § 401.011(42) ("Treating doctor means the doctor who is primarily responsible for the employee's health care for an injury." (internal quotations omitted)).

[Rush]'s light duty hours" to forty hours per week, and Rush began receiving partial temporary income benefits until August 20, 2014. On August 21, 2014, Ace suspended Rush's partial temporary income benefits "based on [its] claim from a peer review report that [Rush]'s compensable injury was limited to an 'electrical shock injury with subsequent redness to [his] left finger' and that [Rush] was not disabled in any respect." Rush continued working his "limit[ed] . . . light duty hours" at Trinity's facility until January 7, 2015. On January 8, 2015, Trinity "effectively laid [Rush] off work and terminated [his] employment." However, Rush "remained [on] either a light duty or total off work status under the care of his treating doctor for the remainder of 2015" and through April 13, 2016.

According to Rush, at some point following his November 4, 2013 electrical shock injury, he requested the appointment of a designated doctor "to address the issues of disability and extent of injury."[16] On January 2, 2015, Ace reinstated Rush's temporary income benefits after the designated doctor "found that [Rush]'s compensable injury extended to and included [a] cervical strain, [a] right shoulder st[r]ain, cervical dis[c] protrusions at C2-3, C4-5, and C5-6, right shoulder tendinosis, [a] partial thickness bursal surface tear of the right shoulder, and memory

---

[16]     *See id.* § 408.0041; *see also id.* § 401.011(15) ("Designated doctor means a doctor appointed by mutual agreement of the parties or by the [DWC] to recommend a resolution of a dispute as to the medical condition of an injured employee." (internal quotations omitted)).

7

loss," that Rush had been disabled since August 21, 2014, and that Rush's "current work status was light duty with restrictions."

Subsequently, Ace sought a post-designated doctor required medical examination report, wherein the doctor opined that Rush's compensable injury was limited to the "electrical shock injury and subsequent redness to [his] left fifth finger" and that Rush had sustained "no disability at any time." (Internal quotations omitted.) The parties then attended a benefit review conference on April 27, 2015 and the June 25, 2015 hearing. Thus, Rush alleged that he had exhausted his administrative remedies and was aggrieved by the administrative appeals panel's confirmation of the June 25, 2015 hearing officer's determination. And Rush sought a judgment setting aside the decision of the appeals panel and "adopting alternate findings," including that Rush's compensable injury of November 4, 2013 extended to and included a cervical strain, a right shoulder strain, disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder, and memory loss, and Rush had sustained "disability resulting from [his] November 4, 2013 compensable injury during the period [of time] beginning [on] June 23, 2014 and continuing through" the June 25, 2015 hearing.

Further, according to Rush, the parties attended a second benefit review conference on February 18, 2016 and the April 13, 2016 hearing. Thus, Rush alleged that he had exhausted his administrative remedies and was aggrieved by the

administrative appeals panel's confirmation of the April 13, 2016 hearing officer's determination. And he sought a judgment setting aside the decision of the appeals panel and "adopting alternate findings," including that his compensable injury of November 4, 2013 extended to and included bilateral carpal tunnel syndrome, Rush had not reached maximum medical improvement as of the April 13, 2016 hearing, and Rush had sustained "disability from [his] November 4, 2013 compensable injury during the period [of time] beginning [on] June 26, 2015 [and] continuing through" the April 13, 2013 hearing.

At trial, Rush testified that on November 4, 2013, while working at the Trinity facility as "[a] burner" cutting steel, he received an electrical shock from a portable electrical powered magnet. Rush explained that on that day he needed a large magnet to place "a wire plate on [a] table" and the magnet that he needed to use was old, did not have a safety light, and contained 440 volts. Although Rush believed that the power to the magnet had been turned off, when he went to unplug the magnet he received an electrical shock which "went in [his] right side" and "came out [his] left [side]." Rush was stuck to the magnet for "about a second," but then freed himself. When he did so, he saw that his fingertip on his left hand was "flat." Rush went to the office at the Trinity facility to report his injury, and the foreman took him to the hospital later that day. At the hospital, Rush's heart was tested and he received a bandage.

9

Rush further testified that, prior to his November 4, 2013 injury, he worked seven days a week and approximately sixty or seventy hours each week. For a week after his electrical shock injury, Rush worked, at the direction of Trinity, in its facility's office. Gradually, he began working outside of the office and training another employee. Although he was in pain following his injury, he had to "take care of [his] kids." For the remainder of 2013, he worked twelve hours a day doing "[l]ight duty."

In January 2014, Rush saw "Dr. Howard" who conducted diagnostic testing, including testing related to Rush's shoulders, neck, and arms. Howard also restricted Rush's work activities, including prohibiting Rush from lifting anything heavy. After Howard restricted his ability to work, Rush still continued teaching other employees at the Trinity facility. However, in June 2014, Trinity began only allowing Rush to work forty hours a week. Thus, in June 2014, Rush "started losing money" because Trinity did not permit him to work overtime hours, like he had previously, and Rush began receiving temporary income benefits for his decrease in salary.

According to Rush, prior to his electrical shock injury, he had never had problems with his right shoulder, such as significant pain; problems with his neck, such as pain, decreased mobility, and headaches; problems with his hands or wrists, such as not being able to "pick[] up things" and tingling; or memory problems, such

as not remembering where he had put "things" down or people's birthdays. When asked if he felt that his "work injury [had] caused at least a sprain or strain to [his] neck and right shoulder," Rush responded, "Yes, sir."

Rush testified that at some point, he went to see "Dr. Carter," a designated doctor, who was asked to look at a purported cervical strain, a right shoulder sprain, a tear related to Rush's right shoulder, memory loss, and Rush's disability. After Rush saw Carter, his temporary income benefits resumed in January 2015. However, in the summer of 2015, after the June 25, 2015 hearing, Rush stopped receiving benefits.

Rush further noted that he had a surgery on his "rotor cuff" and two other ligaments in his arm, and he had "carpal tunnel surgery" on his right wrist which he paid for himself. Rush explained that he needed to have an additional surgery on his left wrist and his left hand because his fingers "act[] up" and "feel like they [are not] alive." Rush had not has another job since his employment with Trinity was terminated in January 2015. Rush testified that he was "disabled" from June 23, 2014 until April 13, 2016.

In summation, Rush testified that after his electrical shock injury he had a cervical strain injury, a right shoulder strain injury, and memory problems, and he had surgery on his wrist and shoulder because of his electrical shock injury. Further, Rush stated that he needed an additional surgery on his left wrist. According to

11

Rush, he had not reached "full maximum improvement" because he could "get better."

During Rush's testimony, the trial court admitted into evidence, without objection, Rush's medical records from the hospital where he was treated on November 4, 2013. The records state that Rush arrived at the hospital six hours after receiving a shock while "unhooking an electrical wire." Rush had "some stiffness [or tightness] and pain in [his] left hand" and "slight redness of [his] small finger," but no blistering. His "[c]hief [c]omplaint" was "evaluation of electrical burn, from electrical shock," he had "[n]o associated symptoms," his "[m]aximum severity of pain [was] rated as 5/10," and his "[c]urrent severity of pain [upon arrival at the hospital was] rated as 2/10." Rush described his pain as dull and intermittent related to his left hand. Rush's pulse, blood pressure, and respiratory rate were normal. Rush appeared alert and cooperative; his skin color was normal. The "[i]nspection findings" related to Rush's skin state: "[B]urn, to [lef]t [h]and, [t]enderness w/o signs of skin burn"; and the "[i]nspection findings" related to his left hand state: "[S]welling, to [lef]t 5th finger." Further, the medical records state that there was "no tenderness" to Rush's neck, the "range of motion [was] normal, [with] no costovertebal angle tenderness" related to his back, and his "[m]otor strength [was] normal, [the] [s]ensation [was] intact, and [the] [r]adial pulse [was] normal," with "some tenderness on palpation of the ulnar side of the left hand and the left small

12

finger" related to his upper extremities. The results from Rush's electrocardiogram were normal. Rush was discharged from the hospital the same day, and the nursing notes stated that he was "in no apparent distress" and denying any pain.

After Rush rested his case, Ace orally moved for a directed verdict, arguing that it was entitled to judgment on the issues of extent of injury, disability, maximum medical improvement, and Rush's impairment rating. The trial court granted Ace's motion and entered a directed verdict, holding that Rush take nothing in his suit against Ace for judicial review of the decisions of the DWC. Rush filed a motion for new trial, which the trial court denied.

### Jurisdiction

As an initial matter, Ace argues that the trial court lacked jurisdiction because Rush did not seek judicial review of the administrative appeals panels' decisions "within the mandatory forty-five day [dead]line" for filing suit. *See* TEX. LAB. CODE ANN. § 410.252(a).

Appellate courts must always determine jurisdiction. *See Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Garcia v. Kubosh*, 377 S.W.3d 89, 104 n.30 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (appellate court's jurisdiction depends on trial court's jurisdiction). Texas Labor Code section 410.252(a), titled "Time for Filing Petition; Venue," provides:

A party may seek judicial review by filing suit not later than the 45th day after the date on which the division mailed the party the decision of the appeals panel. For purposes of this section, the mailing date is considered to be the fifth day after the date the decision of the appeals panel was filed with the division.

TEX. LAB. CODE ANN. § 410.252(a). In *Chicas v. Texas Mutual Insurance Co.*, we held that although the forty-five day deadline for filing a petition seeking judicial review of an administrative appeals panel's decision was mandatory, it was not jurisdictional. 522 S.W.3d. 67, 74 (Tex. App.—Houston [1st Dist.] 2017), *aff'd*, *Tex. Mut. Ins. Co. v. Chicas*, No. 17-0501, --- S.W.3d ---, 2019 WL 1495202 (Tex. Apr. 5, 2019). Instead, we explained that the forty-five day deadline provided for by section 411.252(a) constitutes a statute of limitations. *Chicas*, 522 S.W.3d at 74. The Texas Supreme Court, affirming our decision, agreed, holding that the "45-day deadline to seek review from an appeals-panel decision [found] in section 410.252(a), [was] not jurisdictional." *Tex. Mut. Ins. Co.*, 2019 WL 1495202, at *1, *6. Accordingly, we hold that any purported failure of Rush to comply with the forty-five day deadline found in Texas Labor Code section 411.252(a) did not deprive the trial court of jurisdiction in the instant case.[17]

---

[17] We note that Ace concedes in its brief that this Court in *Chicas* held "that the forty-five day filing requirement, though mandatory[,] act[ed] as a limitations bar as opposed to a jurisdictional bar." However, at the time that Ace filed its brief the Texas Supreme Court had not yet issued its opinion affirming our decision. *See Tex. Mut. Ins. Co. v. Chicas*, No. 17-0501, --- S.W.3d ---, ---, 2019 WL 1495202, at *1, *6 (Tex. Apr. 5, 2019).

14

To the extent that Ace asserts on appeal that Rush "wholly failed to plead or prove that he timely filed suit" and "limitations should . . . result in the dismissal of his case," we note that statute of limitations is an affirmative defense which must be proven at trial or through a motion for summary judgment. *See* TEX. R. CIV. P. 94; *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App.—Austin 2007, no pet.); *In re K.B.S.*, 172 S.W.3d 152, 153 (Tex. App.—Beaumont 2005, pet. denied); *see also Chicas*, 522 S.W.3d at 75 n.4 ("As an affirmative defense, th[e] limitations issue is properly left for resolution by way of a motion for summary judgment . . . ."). An affirmative defense that is not pleaded or proved and on which findings are not obtained is waived. *See Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *In re C.M.*, 996 S.W.2d 269, 270 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("A defendant relying on an affirmative defense must plead, prove, and secure findings to sustain the defense."); *see also Epps v. Fowler*, 351 S.W.3d 862, 869 n.8 (Tex. 2011). Here, Ace only asserted its statute-of-limitations affirmative defense in its plea to the jurisdiction. *See In re D.K.M.*, 242 S.W.3d at 865 ("[A]n affirmative defense such as the running of limitations should be raised through a motion for summary judgment, not through . . . a plea to the jurisdiction."). Because Ace failed to plead, prove, and obtain findings on his statute-of-limitations affirmative defense, we hold that it has waived any complaint related to Rush's purported failure to comply with the statute

of limitations found in Texas Labor Code section 411.252(a).[18]  *See In re M.N.M.*, No. 05-14-00723-CV, 2014 WL 6737003, at \*12 (Tex. App.—Dallas Dec. 1, 2014, pet. denied) (mem. op.) (party "required to plead, prove, and secure findings to sustain the [affirmative] defense in order to preserve [her] complaint for appellate review" (internal quotations omitted)); *Barras v. Barras*, 396 S.W.3d 154, 169 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Moore v. Rotello*, 719 S.W.2d 372, 380 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

**Directed Verdict**

In his first issue, Rush argues that the trial court erred in granting a directed verdict that Rush take nothing in his suit for judicial review of the decisions of the DWC because "there was unquestionably some evidence of probative value to support" a finding that Rush's compensable injury extended to include a cervical strain and a right shoulder strain and that Rush had sustained disability.  Further, the date of Rush's maximum medical improvement and Rush's impairment rating were "factual issues for the jury to decide."

We review the trial court's grant of a directed verdict de novo.  *JP Morgan Chase Bank, N.A., v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).  Directed verdicts are

---

[18]    We need not decide whether Rush actually complied with the statute of limitations applicable to his suit for judicial review.  *See* TEX. R. APP. P. 47.1; *see also* TEX. LAB. CODE ANN. § 411.252(a).

16

reviewed under the same legal-sufficiency standard that applies to no-evidence summary judgments. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller*, 168 S.W.3d at 823, 827. Conclusive evidence cannot be disregarded. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *see also City of Keller*, 168 S.W.3d at 816 ("Evidence is conclusive only if reasonable people could not differ in their conclusions . . . .").

The nonmovant bears the burden of identifying evidence before the trial court that raises a genuine issue of material fact as to each challenged element of his cause of action. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). A directed verdict in favor of the defendant is proper if the plaintiff "fails to present evidence raising a fact issue essential to [his] right of recovery," or the plaintiff "admits or the evidence conclusively establishes a defense to [his] cause of action." *Prudential Ins.*

17

*Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We may affirm a directed verdict on any ground that supports it. *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

When a trial court does not specify the basis for a directed verdict, an appellant has the burden of discrediting each independent ground asserted in the directed-verdict motion, and we must affirm if the appellant fails to challenge each of the possible grounds for the trial court's ruling. *See McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964) (failure to address all grounds raised in directed-verdict motion waives complaint); *Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *3 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.); *Flo Trend Sys., Inc. v. Allwaste, Inc.*, 948 S.W.2d 4, 8 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Guynn v. Corpus Christi Bank & Trust*, 589 S.W.2d 764, 770 (Tex. App.—Corpus Christi 1979, no writ); *McAx Sign Co. v. Royal Coach, Inc.*, 547 S.W.2d 368, 369–70 (Tex. App.—Dallas 1977, no writ); *see also Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (appellate court erred in reversing judgment on grounds raised by court sua sponte); *McCoy v. Rogers*, 240 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (in context of summary judgment, "[w]e must affirm when a judgment may have been rendered, whether

18

properly or improperly, on a ground not challenged on appeal"); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  This is because an appellate court, without the aid of the appealing party, does not have a duty to undertake a search of the record or an investigation into the authorities bearing on the independent grounds not addressed by the appellant.  *McAx Sign Co.*, 547 S.W.2d at 369–70; *see also Guajardo v. Hitt*, 562 S.W.3d 768, 781 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("It is not our duty to review the record, research the law, and then fashion a legal argument for an appellant when he has failed to do so."); *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402–03 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (appellate court under no duty to make independent search of record); *Raitano v. Tex. Dep't of Pub. Safety*, 860 S.W.2d 549, 554 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The Court does not represent the appellant and has no duty to search for pertinent authority.").  Thus, when an appellant does not challenge every possible ground for the trial court's ruling, any error in the granting of the directed verdict is waived.  *See Barton v. Garza*, No. 04-14-00207-CV, 2015 WL 1393428, at *1 (Tex. App.—San Antonio Mar. 25, 2015, no pet.) (mem. op.); *Cont'l Elecs. Corp. v. Eurotech Mkt'g (OVERSEAS) Ltd.*, No. 05-97-01925-CV, 2001 WL 950802, at *3 (Tex. App.—Dallas Aug. 20, 2001, pet. denied) (not

19

designated for publication); *Hopson v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, No. 01-96-00072-CV, 1997 WL 109956, at *1 (Tex. App.—Houston [1st Dist.] Mar. 13, 1997, no writ) (not designated for publication).

Under the Texas Workers' Compensation Act, injuries occurring in the course and scope of employment are compensable. *Payne v. Galen Hosp. Corp.*, 28 S.W.3d 15, 17–18 (Tex. 2000); *see* TEX. LAB. CODE ANN. § 401.011(10) ("Compensable injury means an injury that arises out of and in the course and scope of employment for which compensation is payable . . . ." (internal quotations omitted)). The Act provides a four-tier system for the disposition of claims, with each step being a prerequisite to the succeeding one. *Subsequent Injury Fund v. Serv. Lloyds Ins. Co.*, 961 S.W.2d 673, 675 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see generally* TEX. LAB. CODE ANN. §§ 410.002–410.308. The first tier is a benefit review conference conducted by a benefit review officer. *Subsequent Injury Fund*, 961 S.W.2d at 675; *see generally* TEX. LAB. CODE ANN. § 410.021–.034 (benefit review conference). From the benefit review conference, the parties may proceed, by agreement, to arbitration. *Subsequent Injury Fund*, 961 S.W.2d at 675; *see generally* TEX. LAB. CODE ANN. § 410.101–.121. If the parties do not agree to arbitrate, an aggrieved party may seek relief at a contested case hearing. *Subsequent Injury Fund*, 961 S.W.2d at 675; *see generally* TEX. LAB. CODE ANN. § 410.151–.169. The hearing officer's decision is final in the absence of an appeal. TEX. LAB.

CODE ANN. § 410.169. At the third tier, a party may seek review by an administrative appeals panel. *Subsequent Injury Fund*, 961 S.W.2d at 675; *see generally* TEX. LAB. CODE ANN. § 410.201–.209. Finally, in the fourth tier, a party aggrieved by a final decision of the administrative appeals panel has the right to seek judicial review of the appeals panel's decision. *Subsequent Injury Fund*, 961 S.W.2d at 675; *see generally* TEX. LAB. CODE ANN. § 410.251–.308; *see also Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000); *In re Tex. Workers' Comp. Ins. Fund*, 995 S.W.2d 335, 337 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding).

In the trial court, issues regarding compensability or eligibility for benefits may be tried to a jury and are subject to a modified de novo review. *See* TEX. LAB. CODE ANN. § 410.301; *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 528 (Tex. 1995); *see also Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 253–54 (Tex. 1999); *Croysdill v. Old Rep. Ins. Co.*, 490 S.W.3d 287, 292–93 (Tex. App.—El Paso 2016, no pet.). A party may not raise an issue in the trial court that was not raised before the administrative appeals panel. TEX. LAB. CODE ANN. § 410.302(b); *In re Metro. Transit Auth.*, 334 S.W.3d 806, 811 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding). A trial is "limited to issues decided by the [administrative] appeals panel and on which judicial review is sought," and the "pleadings must specifically set forth the determinations of the appeals panel by

21

which the party is aggrieved." TEX. LAB. CODE ANN. § 410.302(b); *see also S. Ins. Co. v. Brewster*, 249 S.W.3d 6, 16 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The party appealing the appeals panel's decision bears the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303.

## A. Extent of Injury

In a portion of his first issue, Rush argues that the trial court erred in granting a directed verdict on the issue of whether his November 4, 2013 compensable injury extended to include a cervical strain and a right shoulder strain because he "testified that he sustained a cervical strain and [a] right shoulder strain . . . from being stuck to and straining to be released from a 440 volt electrical current for several seconds" and his extent-of-injury issue may be established by his own layperson testimony.

A compensable injury is "an injury that arises out of and in the course and scope of employment for which compensation is payable." TEX. LAB. CODE ANN. § 401.011(10). It is undisputed that on November 4, 2013 Rush sustained a compensable injury that consisted of an electrical shock injury and subsequent redness to his left fifth finger. However, following the June 25, 2015 hearing, a hearing officer concluded that Rush's "compensable injury of November 4, 2013 d[id] not extend to and include a cervical strain, [a right shoulder strain], disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder[,] or memory loss." Further, after the April 13, 2016 hearing, a hearing

22

officer concluded that Rush's "compensable injury of November 4, 2013 d[id] not extend to and include bilateral carpal tunnel syndrome." After the June 25, 2015 hearing officer's decision and the April 13, 2016 hearing officer's decision were upheld by the administrative appeals panels, Rush sought judicial review of the appeals panels' decisions related to his extent-of-injury issue.

At trial, after Rush rested his case, Ace moved for a directed verdict, which the trial court granted, on Rush's extent-of-injury issue, i.e., whether his November 4, 2013 compensable injury extended to include a cervical strain, a right shoulder strain, disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder, memory loss, and bilateral carpal tunnel syndrome. On appeal, however, Rush does not challenge the trial court's directed verdict on extent of injury as it relates to his disc protrusions at C3 through C6, tendinosis and a partial thickness tear of the right shoulder, memory loss, and bilateral carpal tunnel syndrome. Instead, he limits his argument, asserting only that the trial court erred in granting a directed verdict on the issue of whether his compensable injury extended to include a cervical strain and a right shoulder strain. We address this portion of his first issue accordingly. *See* TEX. R. APP. P. 47.1 (appellate court may address only issues raised by party); *Tex. Ass'n Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *Vawter*, 786 S.W.2d at 264 ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error.");

23

*Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 68 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (where appellant did not challenge directed verdict on certain issues, he did not provide basis for overturning trial court's ruling).

In regard to whether Rush's November 4, 2013 compensable injury extended to include a cervical strain and a right shoulder strain, Ace argued, in part, that it was entitled to a directed verdict on the issue because Rush had failed to introduce evidence that his November 4, 2013 compensable injury was the producing cause of his cervical strain and right shoulder strain. Rush addresses this ground for a directed verdict in his brief. However, Ace also argued that it was entitled to a directed verdict because the issue of whether Rush's November 4, 2013 compensable injury extended to include a cervical strain and a right shoulder strain was "moot," Rush had already received treatment for his cervical strain and his right shoulder strain, and there was no evidence that Rush required further treatment for those purported injuries. Notably, Rush, on appeal, does not address any of these potential grounds for the trial court's directed verdict.

The trial court in its order did not specify the basis for granting a directed verdict on Rush's extent-of-injury issue. Because Rush had the burden of discrediting each independent ground asserted in Ace's directed-verdict motion and failed to do so in the instant case, he has waived any error related to the trial court's directed verdict on his extent-of-injury issue and we must affirm the trial court's

24

ruling. *See McKelvy*, 381 S.W.2d at 62 (failure to address all grounds raised in directed-verdict motion waives complaint); *Tijerina*, 2017 WL 506779, at *3; *Flo Trend Sys.*, 948 S.W.2d at 8; *Guynn*, 589 S.W.2d at 770; *McAx Sign Co.*, 547 S.W.2d at 369–70; *see also Vawter*, 786 S.W.2d at 264 (appellate court erred in reversing judgment on grounds raised by court sua sponte); *Barton*, 2015 WL 1393428, at *1; *McCoy*, 240 S.W.3d at 272 (in context of summary judgment, "[w]e must affirm when a judgment may have been rendered, whether properly or improperly, on a ground not challenged on appeal"); *Ellis*, 68 S.W.3d at 898; *Cont'l Elecs. Corp.*, 2001 WL 950802, at *3; *Hopson*, 1997 WL 109956, at *1.

We overrule this portion of Rush's first issue.

## B. Disability

In another portion of his first issue, Rush argues that the trial court erred in granting a directed verdict on the issue of whether he sustained disability resulting from the November 4, 2013 compensable injury during the period of time beginning on November 5, 2013 and continuing through the date of the April 16, 2016 hearing because he "testified that he had been disabled as a result of his work related injuries during the period between November 5, 2013 and April 13, 2016 [sic]" and "the issue of disability [could] be based on [his] sole testimony."

Disability means "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the pre[-]injury wage." TEX. LAB. CODE

ANN. § 401.011(16). Under the Texas Workers' Compensation Act, temporary income benefits are payable for all periods of disability through the date of maximum medical improvement. *See id.* §§ 408.101(a), 408.102(a); *Garcia*, 893 S.W.2d at 513 (temporary income benefits accrue when employee suffers disability and continue until "maximum medical improvement" (internal quotations omitted)); *Green v. Fort Bend Indep. Sch. Dist.*, No. 01-06-01157-CV, 2007 WL 4465358, at *5 (Tex. App.—Houston [1st Dist.] Dec. 20, 2007, pet. denied) (mem. op.). Temporary income benefits are paid to compensate for lost wages during an employee's convalescence. *Rodriguez*, 997 S.W.2d at 253. However, once an employee reaches maximum medical improvement, temporary income benefits end. *Id.*

At trial, after Rush rested his case, Ace moved for a directed verdict, which the trial court granted, on Rush's disability issue, i.e., did Rush sustain disability resulting from the November 4, 2013 compensable injury during the period of time beginning on November 5, 2013 and continuing through the date of the April 16, 2016 hearing. Specifically, Ace argued that it was entitled to a directed verdict on Rush's disability issue because the issue was "moot" because Rush had "already received . . . money" from Ace and had "received . . . benefits," Ace could not "get [the] money [it paid] back," and Rush reached maximum medical improvement in

April 2014, so any finding of disability beyond that date had "no legal significance" and the court would be issuing an advisory opinion.

On appeal, Rush argues that the trial court erred in granting a directed verdict on his disability issue because he "testified that he had been disabled as a result of his work related injuries during the period between November 5, 2013 and April 13, 2016 [sic]" and "the issue of disability [could] be based on [his] sole testimony." However, Rush failed to address any of the aforementioned bases as a potential ground for the trial court's directed verdict.

The trial court in its order did not specify the basis for granting a directed verdict on Rush's disability issue. Because Rush had the burden of discrediting each independent ground asserted in Ace's directed-verdict motion and failed to do so in the instant case, he has waived any error related to the trial court's directed verdict on his disability issue and we must affirm the trial court's ruling. *See McKelvy*, 381 S.W.2d at 62 (failure to address all grounds in directed-verdict motion waives complaint); *Tijerina*, 2017 WL 506779, at *3; *Flo Trend Sys.*, 948 S.W.2d at 8; *Guynn*, 589 S.W.2d at 770; *McAx Sign Co.*, 547 S.W.2d at 369–70; *see also Vawter*, 786 S.W.2d at 264; *Barton*, 2015 WL 1393428, at *1; *McCoy*, 240 S.W.3d at 272; *Ellis*, 68 S.W.3d at 898; *Cont'l Elecs. Corp.*, 2001 WL 950802, at *3; *Hopson*, 1997 WL 109956, at *1.

We overrule this portion of Rush's first issue.

27

## C.      Maximum Medical Improvement and Impairment Rating

In the remaining portion of his first issue, Rush argues that the trial court erred in granting a directed verdict on the issues of maximum medical improvement and his impairment rating because any "favorable finding for [Rush] on any part of [his] extent[-]of[-]injury issue would invalidate the only certification of" maximum medical improvement and his impairment rating made in the instant case.

Relevant to this appeal, maximum medical improvement means the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated" or "the expiration of 104 weeks from the date on which income benefits begin to accrue." *See* TEX. LAB. CODE ANN. § 401.011(30)(A)–(B). An employee's impairment rating is the "percentage of permanent impairment of the whole body resulting from a compensable injury." *See id.* § 401.011(24); *see also McWatt v. Mattax*, No. 03-13-00332-CV, 2015 WL 1285793, at *1 n.5 (Tex. App.—Austin Mar. 18, 2015, no pet.) (mem. op.). To determine an impairment rating, an examining doctor evaluates the permanent effect of an employee's injury under certain statutory guidelines. *See* TEX. LAB. CODE ANN. § 408.124; *Rodriguez*, 997 S.W.2d at 253. The doctor expresses the rating as a percentage of permanent impairment to the employee's whole body. *See* TEX. LAB. CODE ANN. §§ 401.011(24), 408.123; *Rodriguez*, 997 S.W.2d at 253.

In order to obtain impairment income benefits, an employee must be certified by a doctor as having reached maximum medical improvement and must be assigned an impairment rating by a certifying doctor. *See* TEX. LAB. CODE ANN. § 408.123(a); *McWatt*, 2015 WL 1285793, at *1 n.5. After reaching maximum medical improvement, an employee can receive impairment income benefits based on his impairment rating; the greater the impairment rating, the greater the amount the employee receives as impairment income benefits. *Rodriguez*, 997 S.W.2d at 253.

As an initial matter, we note that Rush's assertion that the trial court erred in granting a directed verdict on the issues of maximum medical improvement and his impairment rating appears to be conditioned on this Court finding in his favor on his extent-of-injury issue. In other words, Rush appears to assert that if this Court finds that the trial court erred in granting a directed verdict on the issue of whether his November 4, 2013 compensable injury extended to include a cervical strain and a right shoulder strain, then we must also find that the trial court erred in granting a directed verdict on the issues of maximum medical improvement and his impairment rating. As previously addressed, however, we must affirm the trial court's directed verdict on Rush's extent-of-injury issue.

Further, to the extent that Rush argues that the trial court erred in granting a directed verdict on the issues of maximum medical improvement and his impairment rating because the determination of maximum medical improvement and his

29

impairment rating by the certified doctor were "invalid[]," Rush failed to present his validity issue to an administrative appeals panel or to the trial court. Under such circumstances, we are prohibited from considering this issue on appeal. *See State Office of Risk Mgmt. v. Joiner*, 363 S.W.3d 242, 253–55 (Tex. App.—Texarkana 2012, pet. denied) (appellate court could not address validity issue that was not decided by administrative appeals panel or trial court); *see also* TEX. LAB. CODE ANN. § 410.302(b) (trial court limited to issues decided by administrative appeals panel and pleadings in trial court must specifically set forth determinations of appeals panel by which party is aggrieved); *Thompson v. Ace Am. Ins. Co.*, No. 01-10-00810-CV, 2011 WL 3820889, at *4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. denied) (mem. op.) ("A party waives judicial review of any issue not raised before the [administrative] [a]ppeals [p]anel and identified in a timely request for judicial review."); *Brewster*, 249 S.W.3d at 16.

Additionally, we note that Ace argued that it was entitled to a directed verdict on the issues of maximum medical improvement and Rush's impairment rating because Rush had not raised his validity issue before the administrative appeals panel. On appeal, Rush fails to address this potential ground for the trial court's directed verdict.

The trial court in its order did not specify the basis for granting a directed verdict on Rush's issues of maximum medical improvement and his impairment

30

rating. Because Rush had the burden of discrediting each independent ground asserted in Ace's directed-verdict motion and failed to do so in the instant case, he has waived any error related to the directed verdict on his issues of maximum medical improvement and his impairment rating and we must affirm the trial court's ruling. *See McKelvy*, 381 S.W.2d at 62 (failure to address all grounds raised in directed-verdict motion waives complaint); *Tijerina*, 2017 WL 506779, at *3; *Flo Trend Sys.*, 948 S.W.2d at 8; *Guynn*, 589 S.W.2d at 770; *McAx Sign Co.*, 547 S.W.2d at 369–70; *see also Vawter*, 786 S.W.2d at 264; *Barton*, 2015 WL 1393428, at *1; *McCoy*, 240 S.W.3d at 272; *Ellis*, 68 S.W.3d at 898; *Cont'l Elecs. Corp.*, 2001 WL 950802, at *3; *Hopson*, 1997 WL 109956, at *1.

Moreover, Ace also argued that it was entitled to a directed verdict on the issues of maximum medical improvement and Rush's impairment rating because Rush failed to present contrary evidence from a qualified doctor. On appeal, although Rush appears to argue that the trial court erred in granting a directed verdict on the issues of maximum medical improvement and his impairment rating because such issues could be established by his own layperson testimony, he provides no actual discussion, analysis, or citation to authority to support for his argument. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). A failure to provide substantive analysis of an issue or cite appropriate authority

31

waives a complaint on appeal. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error).

We overrule this portion of Rush's first issue.

Due to our disposition above, we need not address Rush's second and third issues in which he asserts that the trial court erred in excluding certain evidence. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.